1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANIEL WRIGHT,

11             Plaintiff,                    No. 2:09-cv-2349 MCE JFM (PC)

12        vs.

13   DOROTHY E. SWINGLE, et al.,

14             Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16             Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  In the operative complaint filed August 24, 2009, plaintiff alleges that

18   defendants routinely run out of his prescription medication, causing him pain and sleep loss, and

19   defendants' medical directive to "crush and float" certain medication taken by plaintiff causes

20   swelling in his throat and numbness in his mouth.  Compl. at 3.  This matter is before the court

21   on defendants' motion for summary judgment.  Plaintiff opposes the motion.

22                                   FACTS

23             The following facts are undisputed unless noted otherwise.  At all times relevant

24   to this action, plaintiff was a prisoner at High Desert State Prison ("HDSP"), Dorothy Swingle

25   was the Chief Medical Officer at HDSP, and J. Nepomuceno was the Chief Physician and

26   Surgeon at HDSP.  See Mot. for Summ. J., Ex. A at 1-5; Swingle Decl., ¶ 1; Compl. at 2-3.

                                      1

1.      Delayed Receipt of Medication

        Plaintiff has a chronic condition causing him pain in his lower back and neck.  See

Mot. for Summ. J., Ex. C at 1-38, 62; Opp'n, Ex. C at 1.  While at HDSP, plaintiff has been

prescribed multiple medications for the treatment of his pain, including Naproxen,

Acetaminophen, and Amitryptiline.  See Mot. for Summ. J., Ex. C at 178-82.

        The Pharmacist in Chief, not named in this action, and his staff are responsible for

ordering and stocking the prescription medications for inmates at HDSP.  Swingle Decl., ¶ 3.

Neither defendant supervises the pharmacist and neither is not involved in ordering medications

for the prison.  Id.

        Since 2008, plaintiff filed numerous Health Care Services Request Forms in

which he complained that he has not been receiving his prescribed medication in a timely

manner.  E.g., "I have not been [getting] my medication that I been [prescribed]," filed April 29,

2008, Opp'n, Ex. C at 7; "This is my second health care request form that I sent to get my

medication. I would like to know what is the holdup on my medication. . . . ," filed June 21,

2008, id. at 9, ". . . I am still not [getting] my prescribed medication.  This is a continuous

[situation.]  I get my medication sometimes and sometimes I don't get it. I would like to know

why. . . . ," filed August 3, 2008, id. at 20; and "I have been waiting for two weeks for my

medication. I would like to know what happ[ened] to it . . . ," filed August 22, 2008, id. at 21.

        On April 30, 2009, plaintiff filed a 602 inmate appeal form[1] in which he

complained that on April 15, 2009 the medical staff had run out of his pain medication and that

"they keep letting my pain medication run out."[2]  Mot. for Summ. J., Ex. A at 8.  At the informal

---

[1] California prison regulations provide administrative procedures in the form of one
informal and three formal levels of review to address an inmate's claims.  See Cal. Code Regs.
tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a plaintiff has
received a "Director's Level Decision," or third level review, with respect to his issues or claims.
Cal. Code Regs. tit. 15, § 3084.5.

[2] Since filing the grievance, plaintiff continued to complain about his delayed receipt of
prescription medication.  See Opp'n, Ex. C at 1-59 (Health Request Services Forms filed on June

2

1    level of review, plaintiff was informed that his prescription for Amitriptyline had run out and had

2    to be renewed by a nurse.  Id.  Dissatisfied, plaintiff appealed this response on the ground that it

3    did not "address [plaintiff's] request to have this stop happening to [him] consistently."  Id.

4           On June 22, 2009 at the first formal level of review, plaintiff's appeal was

5    partially granted by Nepomuceno, who stated that medication refills need to be approved by the

6    provider and filled by the pharmacy staff.  Mot. for Summ. J., Ex. A at 8.  Nepomuceno further

7    stated that, despite plaintiff's allegation that this was an ongoing problem, there was no

8    indication that plaintiff had missed any more than one dose of medication.  Id. at 10.

9           Plaintiff appealed this decision, arguing that he did not receive his medication

10   from April 30, 2008 to May 9, 2008.  See Opp'n, Ex. E at 1.  On July 16, 2008 at the second

11   formal level of review, plaintiff's appeal was partially granted by N. Acquaviva, Health Care

12   Manager.  See id.  Therein, plaintiff was informed that the Medication Administration Record

13   (MAR) was incomplete during the complained-of time frame because plaintiff was admitted to

14   the Correctional Treatment Center for medical issues during that time.  Id.  Plaintiff was also

15   informed that the California Department of Corrections ("CDCR") "implemented a new

16   computerized pharmacy system which should alleviate this issue."  Id.  There is no evidence that

17   plaintiff appealed to the Director's Level of Review.

18   2.    DOT, Crush and Float Policy

19          In response to his back pain, plaintiff was prescribed 50 mg of Amitriptyline,

20   which was scheduled to be taken in the evenings.  See Swingle Decl., ¶¶ 8-9.  In 2008,

21   defendants Swingle and Nepomuceno issued a memorandum ordering that certain controlled

22

23

24   ─────────────────────

25   15, 2009; July 18, 2009; August 24, 2009; September 8, 2009; September 15, 2009; October 5,
     2009; October 10, 2009; December 1, 2009; December 3, 2009; December 6, 2009; January 7,
26   2010; March 7, 2010; March 22, 2010; April 19, 2010; May 6, 2010; May 18, 2010; July 17,
     2010; and July 21, 2010).

substances, including Amitriptyline[3], be administered "DOT, Crush and Float with water"[4] in response to the increase in the diversion and misuse of controlled substances by inmates at HDSP.  Swingle Decl., ¶¶ 4-5; Mot. for Summ. J., Ex. D.  Every medication ordered to be crushed and floated was reviewed and approved by the pharmacist to ensure that the safety and efficacy are not significantly affected.  Swingle Decl., ¶ 5.  Amitriptyline used at HDSP is not a controlled release medication.  Id. ¶ 10.

On November 23, 2008, plaintiff filed a 602 inmate appeal form complaining about the practice of crushing his medication and mixing them in water "causing the medication to stick to the bottom and sides of the cup," thereby preventing him from getting his full dose. Mot. for Summ. J., Ex. A at 11.  On December 9, 2008 at the informal level of review, plaintiff was informed that "[p]er memorandum dated 9-3-08 it is policy and not optional to crush and float certain medications."  Id.  On December 12, 2008, plaintiff appealed this response on the ground that the policy effectively lowers his dosage and causes him pain.  Id.  On January 21, 2009 at the first formal level of review, plaintiff's appeal was denied by S. Martin, the Director of Nursing, who advised plaintiff that "HDSP policy states that any medication in the controlled substance category will be administered as, 'DOT, Crush and Float with water' until the order is changed by the provider."  Id. at 13.  Plaintiff was told that he could request more water from the nurse to swish in the cup to get the remainder of his medication or he could request to see the provider to inquire into the possibility of changing to another medication for the same treatment; there is no evidence plaintiff ever pursued that solution.  Id.  On February 11, 2009 at the second

---

[3]  Other medications subject to the crush and float policy included Acetaminophen with Codeine (Tylenol #3), Diphenhydramine (Benadryl), Gabepentin (Neurontin), Hydrocodone with APAP (Vicodin, Norso), Hydroxyzine (Atarax), Methadone (Dolophine), Methocarbamal (Robaxin), Morphine Sulfate Immediate Release (MS-IR), Oxycodone with APAP (Percocet) and Tramadol (Ultram).  See Swingle Decl., ¶ 6.

[4]  The process of crushing and floating medications involves grinding the medication into a powder and placing it in water.  Swingle Decl., ¶ 11.  A standardized instrument called a "pill-crusher" is used to prepare the medication.  Id.

1   formal level of review, plaintiff's appeal was denied by Swingle on the ground that the HDSP

2   policy of crushing controlled substance medication, including amitriptyline, is not optional. Id.

3   at 14-15.    There is no evidence that plaintiff appealed to the Director's Level of Review.

4   SUMMARY JUDGMENT STANDARDS UNDER RULE 56

5          Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant

6   summary judgment if the movant shows that there is no genuine dispute as to any material fact

7   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5]   A shifting

8   burden of proof governs motions for summary judgment under Rule 56.  Nursing Home Pension

9   Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir.

10  2010).  Under summary judgment practice, the moving party

11          always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
12          pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
13          demonstrate the absence of a genuine issue of material fact.

14  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

15  56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

16  only prove that there is an absence of evidence to support the non-moving party's case."  In re

17  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

18  Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

19  not have the trial burden of production may rely on a showing that a party who does have the trial

20  burden cannot produce admissible evidence to carry its burden as to the fact").

21          If the moving party meets its initial responsibility, the opposing party must

22  establish that a genuine dispute as to any material fact actually does exist.  See Matsushita Elec.

23  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

24

25          [5]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
    2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26  56, "[t]he standard for granting summary judgment remains unchanged."

1    judgment, the opposing party must demonstrate the existence of a factual dispute that is both

2    material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

3    Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

4    Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

5    that a reasonable jury could return a verdict for the nonmoving party,'" FreecycleSunnyvale v.

6    Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

7    party opposing summary judgment must support the assertion that a genuine dispute of material

8    fact exists by:  "(A) citing to particular parts of materials in the record, including depositions,

9    documents, electronically stored information, affidavits or declarations, stipulations . . . ,

10   admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

11   not establish the absence or presence of a genuine dispute, or that an adverse party cannot

12   produce admissible evidence to support the fact."[6]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

13   the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

14   Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

15          In resolving a summary judgment motion, the evidence of the opposing party is to

16   be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be

17   drawn from the facts placed before the court must be viewed in a light most favorable to the

18   opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec. Litig., 627 F.3d at 387.

19   However, to demonstrate a genuine factual dispute, the opposing party "must do more than

20   simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

21   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

23   /////

24   _____

25   [6] "The court need consider only the cited materials, but may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

26   Fed. R. Civ. P. 56(c)(2).

1    On November 9, 2009, the court advised plaintiff of the requirements for

2 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

3 Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and

4 Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5                                    DISCUSSION

6    Plaintiff brings two claims for relief.  First, plaintiff argues that defendants

7 violated his Eighth Amendment rights by failing to provide his medication in a timely manner.

8 Next, plaintiff argues that defendants were deliberately indifferent to his medical needs when

9 they initiated a policy of "crushing and floating" certain medications.  Defendants seek summary

10 judgment on both of these claims.  Alternatively, defendants seek qualified immunity.

11 A.    Standards

12    Generally, deliberate indifference to a serious medical need presents a cognizable

13 claim for a violation of the Eighth Amendment's prohibition against cruel and unusual

14 punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); Toussaint v. McCarthy, 801 F.2d 1080,

15 1111 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987).  According to Farmer v. Brennan, 511

16 U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison

17 official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that

18 risk by failing to take reasonable measures to abate it."  The deliberate indifference standard "is

19 less stringent in cases involving a prisoner's medical needs than in other cases involving harm to

20 incarcerated individuals because 'the State's responsibility to provide inmates with medical care

21 ordinarily does not conflict with competing administrative concerns.' "  McGuckin v. Smith, 974

22 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled

23 on other grounds by WMX Technologies, Inc. V. Miller, 104 F.3d 1133 (9th Cir. 1997).

24 Specifically, a determination of "deliberate indifference" involves two elements: (1) the

25 seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to

26 those needs.  McGuckin, 974 F.2d at 1059.

7

1          First, a "serious" medical need exists if the failure to treat a prisoner's condition

2  could result in further significant injury or the "unnecessary and wanton infliction of pain." Id.

3  (citing Estelle, 429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for

4  medical attention include the existence of an injury that a reasonable doctor or patient would find

5  important and worthy of comment or treatment; the presence of a medical condition that

6  significantly affects an individual's daily activities; or the existence of chronic and substantial

7  pain.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990));

8  Hunt v. Dental Dep't., 865 F.2d 198, 200-01 (9th Cir. 1989).

9          Second, the nature of a defendant's responses must be such that the defendant

10  purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for

11  "deliberate indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate

12  indifference may occur when prison officials deny, delay, or intentionally interfere with medical

13  treatment, or may be shown by the way in which prison physicians provide medical care."

14  Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate

15  indifference to be established, there must first be a purposeful act or failure to act on the part of

16  the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060. "A defendant must

17  purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for

18  deliberate indifference to be established."  Id.  Second, there must be a resulting harm from the

19  defendant's activities.  Id.

20  B.     Withholding Medication

21          In order to defeat defendants' motion for summary judgment, plaintiff must

22  "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., Inc.

23  v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and

24  citation omitted), that defendants withheld his medication "in conscious disregard of an

25  excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.) (citing

26  Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

1    Here, plaintiff asserts that defendants are responsible for the implementation and

2    continuation of a policy of tardily ordering prescription medication.  The evidence submitted by

3    defendants, however, shows that the Pharmacist in Charge and not these defendants is

4    responsible for ordering and stocking prescription medication.  In his opposition, plaintiff argues

5    that the 2008 memorandum authored by defendants implementing the crush and float policy

6    demonstrates that they did, indeed, have the authority to order prescription medication.  The

7    court disagrees.  The issuance of the memorandum establishes only that the defendants had the

8    authority to implement a policy concerning the manner in which certain prescription medication

9    would be distributed.  It does not establish that defendants had the authority to order prescription

10   medication.  As such, the evidence does not reflect a genuine issue of fact that defendants

11   participated in or implemented a policy concerning the alleged constitutional violation, that they

12   directed it, or that they showed a "callous indifference" to plaintiff's right to medical care.

13   To the extent plaintiff's complaint can be construed to read that defendants are

14   responsible for an ongoing violation of his rights (i.e., a continuing delay in the provision of

15   prescription medication), the court notes, initially, that Swingle did not respond to plaintiff's

16   appeal concerning this issue and there is no evidence to indicate that she was aware of it.  A

17   defendant cannot be deliberately indifferent to a medical need without first being aware of the

18   need.  See Farmer v. Brennan, 511 U.S. 825, 847 (1994).

19   As to Nepomuceno, who responded to plaintiff's inmate grievance at the First

20   Level, plaintiff may show liability if he can demonstrate that Nepomuceno had the authority yet

21   failed to prevent continuing delays in plaintiff's receipt of his prescription medication.  See

22   Herrera v. Hall, 2010 WL 2791586, slip op. at 4-5 (E.D. Cal. 2010).  "[I]if there is an ongoing

23   constitutional violation and the appeals coordinator had the authority and opportunity to prevent

24   the ongoing violation, a plaintiff may be able to establish liability by alleging that the appeals

25   coordinator knew about an impending violation and failed to prevent it."  Id. (citing Taylor v.

26   List, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisory official liable under Section 1983 if he or

9

1  she knew of a violation and failed to act to prevent it)).  See also Ham v. Clark, 2009 WL

2  2355265, slip op. at 1-2 (E.D. Cal. 2009) (district court dismissed plaintiff's claims against

3  prison officials who denied his administrative appeals on two grounds: (1) the plaintiff has no

4  substantive right to a particular grievance procedure, and (2) the plaintiff failed to demonstrate

5  that the appeals reviewers were personally involved with plaintiff's medical care or treatment).

6         Assuming *arguendo* that plaintiff's receipt of prescription medication continued

7  to be delayed following the processing of his inmate appeal, plaintiff fails to respond to

8  defendants' evidence showing that only the Pharmacist in Chief had the authority to order and

9  stock prescription medication, not Nepomuceno or Swingle.

10        Accordingly, summary judgment should be granted for defendants on this claim.

11 C.    Crush and Float Policy

12        Plaintiff's second claim is brought on the ground that defendants were deliberately

13 indifferent to his medical needs when they ordered that Amitriptyline be crushed and floated.

14        Plaintiff takes issue with HDSP's policy of "crushing and floating" Amitriptyline,

15 which he states causes swelling and numbness in his mouth.  The evidence is undisputed that the

16 Amitriptyline as used at HDSP is not a controlled-release medication and that the efficacy of

17 Amitriptyline is not affected by crushing and floating it.  Although plaintiff has suffered side

18 effects of the policy of HDSP to crush and float controlled substances, on the evidence in the

19 record, no reasonable jury could conclude that the defendants' policy of delivering Amitriptyline

20 in crushed and floated form was medically unacceptable and that defendants chose this course in

21 conscious disregard of an excessive risk to plaintiff's health.

22        Accordingly, summary judgment should be entered on this claim for defendants.

23 D.    Qualified Immunity

24        Because the court has found that defendants are entitled to summary judgment, the

25 court need not address defendants' argument for qualified immunity.

26 /////

1            For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

2    defendants' September 17, 2010 motion for summary judgment be granted.

3            These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5    days after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

8    failure to file objections within the specified time may waive the right to appeal the District

9    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   DATED: June 29, 2011.

11

12                                         _____

13                                 UNITED STATES MAGISTRATE JUDGE

14   /014;wrig2349.msj

15

16

17

18

19

20

21

22

23

24

25

26

11